UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
BENJAMIN SALZANO, individually and on behalf   :
of all other persons similarly situated,        :    Civil Action No.:  13-cv-5600 (LGS)
                                                :
                                                :
                       Plaintiff,               :
                                                :
        -against-                               :
                                                :
                                                :
LACE ENTERTAINMENT INC., and GLEN               :
ORECCHIO, jointly and severally,                :
                                                :
                       Defendants.              :
------------------------------------------------------------------ x

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, TO STAY THE ACTION PURSUANT TO THE FEDERAL ARBTRATION ACT**

Meister Seelig & Fein LLP
Two Grand Central Tower
140 East 45th Street, 19th Floor
New York, New York 10017
(212) 655-3500
*Attorneys for Defendants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................... 1

FACTS ..................................................................................................................................................... 2

    I.     Background ............................................................................................................................. 2

    II.    Mr. Salzano Performed at Lace How and When He Chose ................................................... 3

    III.   Mr. Salzano Agrees to Arbitrate Any Claims
          Arising Out of His Lease and Performance at Lace ............................................................... 3

    IV.   Mr. Salzano Claims Disability and Stops Performing at Lace ............................................... 4

STANDARD OF REVIEW ................................................................................................................... 4

ARGUMENT .......................................................................................................................................... 5

    I.     The Complaint Should Be Dismissed Pursuant to FRCP §§ 12(b)(1),
         12(b)(6) and §§ 2, 3, and 4 of the FAA and Arbitration Compelled
         Because All Causes of Action Are Subject to Compulsory Arbitration ................................. 5

       A.   The Federal Arbitration Act .................................................................................................. 6

       B.   There Is No Question that the Parties Agreed to Arbitrate ................................................... 8

       C.   All of Mr. Salzano's Claims Fall Expressly within the Scope of the Agreements ............... 9

       D.   Claims Brought Pursuant to the FLSA and NYLL are Arbitrable ......................................... 9

    II.    Should the Court Decline to Dismiss the Complaint, a Stay
         Should Be Granted Pending the Outcome of Arbitration .................................................... 10

CONCLUSION ..................................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Arrigo v. Blue Fish Commodities, Inc.*,
   704 F. Supp. 2d 299 (S.D.N.Y. 2010) *aff'd,* 408 F. App'x 480 (2d Cir. 2011) ......................... 9

*AT&T Mobility LLC v. Concepcion*,
   131 S. Ct. 1740 (2011) .............................................................................................................. 6

*Ciago v. Ameriquest Mortgage Co.*,
   295 F. Supp. 2d 324 (S.D.N.Y. 2003) ................................................................................ 8, 10

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001) .................................................................................................................. 7

*CompuCredit Corp. v. Greenwood*,
   132 S. Ct. 665 (2012) ................................................................................................................ 6

*Dixon v. NBC Universal Media, LLC*,
   No. 12 Civ. 7646 (PAE), 2013 WL 2355521 (S.D.N.Y. May 28, 2013) ................................. 9

*Drakeford v. Washington Mut.*,
   07 CIV. 03489 (GBD), 2008 WL 2755838 (S.D.N.Y. July 11, 2008) ..................................... 8

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991) .................................................................................................................... 9

*Green Tree Fin. Corp.-Alabama v. Randolph*,
   531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000) ............................................................ 4

*In re Am. Express Merchants' Litig.*,
   634 F.3d 187 (2d Cir. 2011) ..................................................................................................... 4

*Isaacs v. OCE Bus. Servs., Inc.*,
   13 CIV. 0548 JGK, 2013 WL 4744807 (S.D.N.Y. Sept. 4, 2013) ............................................ 7

*Johnson v. Tishman Speyer Properties, L.P.*,
   09 CIV. 1959 (WHP), 2009 WL 3364038 (S.D.N.Y. Oct. 16, 2009) .................................. 7- 8

*LaVoice v. UBS Fin. Servs., Inc.*,
   11 CIV. 2308 BSJ JLC, 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012) .................................. 4, 6

*Matter of Ball (SFX Broad. Inc.)*,
   236 A.D.2d 158, 665 N.Y.S.2d 444 (3d Dep't 1997) ............................................................... 8

*Metzler v. Harris Corp.*,
   00 CIV 5847 HB, 2001 WL 194911 (S.D.N.Y. Feb. 26, 2001) .............................................. 10

*Mikes v. Strauss*,
   889 F. Supp. 746 (S.D.N.Y. 1995) ...................................................................................... 10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) .............................................................................................................. 6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .................................................................................................................. 7

*Nunez v. Citibank, N.A.*,
   08 CV. 5398 (BSJ), 2009 WL 256107 (S.D.N.Y. Feb. 3, 2009) ......................................... 5, 7

*Oldroyd v. Elmira Sav. Bank. FSB*,
   134 F.3d 72 (2d Cir. 1998) ................................................................................................. 6, 9

*Reynolds v. de Silva*,
   09 CIV. 9218 (CM), 2010 WL 743510 (S.D.N.Y. Feb. 24, 2010) ............................. 5, 7, 9, 10

*Roby v. Corp. of Lloyd's*,
   996 F.2d 1353 (2d Cir. 1993) ............................................................................................... 7

*Rompalli v. Portnova*,
   09 CIV. 3083 RMB/FM, 2010 WL 2034396 (S.D.N.Y. May 5, 2010)
   *report and recommendation adopted,* 09 CIV. 3083 RMB/FM, 2010 WL 2034362
   (S.D.N.Y. May 21, 2010) ................................................................................................ 8, 9

*Spencer-Franklin v. Citigroup/Citibank N.A.*,
   06 CIV. 3475 GBDGWG, 2007 WL 521295 (S.D.N.Y. Feb. 21, 2007)
   *report and recommendation adopted,* 06 CIV. 3475 (GBD), 2007 WL 1052451
   (S.D.N.Y. Apr. 5, 2007) ....................................................................................................... 7

*Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*,
   263 F.3d 26 (2d Cir. 2001) ................................................................................................... 7

*Steele v. L.F. Rothschild & Co., Inc.*,
   701 F. Supp. 407 (S.D.N.Y. 1988) ...................................................................................... 10

*Sutherland v. Ernst & Young LLP*,
   12-304-CV, 2013 WL 4033844 (2d Cir. Aug. 9, 2013) ......................................................... 7

**Statutes**

9 U.S.C. § 2 ................................................................................................................... 1, 2, 5, 6

9 U.S.C. § 3 ............................................................................................................................ *passim*
9 U.S.C. § 4 ................................................................................................................................ 1, 5, 6- 7
29 U.S.C. § 201 et seq. .................................................................................................................. 5, 9, 10
N.Y. Lab. Law .............................................................................................................................. 5, 9, 10

### Rules

Fed. R. Civ. P. 12(b)(1) ............................................................................................................. 1, 2, 5, 11
Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 1, 2, 5, 11

Defendants Lace Entertainment Inc. ("LEI") and Glen Orecchio (collectively "Defendants") respectfully submit this memorandum of law in support of their (1) motion to dismiss plaintiff Benjamin Salzano's ("Plaintiff" or "Mr. Salzano") complaint (the "Complaint")[1] pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") and pursuant to §§ 2, 3 and 4 of the Federal Arbitration Act (the "FAA") in its entirety with prejudice and to compel arbitration, or, in the alternative, (2) to stay this action pending the result of compulsory arbitration, pursuant to §§ 2, 3 and 4 of the FAA.

## PRELIMINARY STATEMENT

Plaintiff Benjamin Salzano performed disc jockey services at Lace Gentlemen's Club, West Nyack, which is wholly owned by defendant Lace Entertainment Inc. ("Lace").[2] Mr. Salzano, who first performed under a lease agreement, and who was later hired as an employee, alleges for the first time in this lawsuit that Lace had violated both state and federal wage and hour laws. These allegations come only after Mr. Salzano asked that Lace void his paychecks checks so that he could file for disability benefits, despite his admission that he was physically able to work. Naturally, Lace refused this request. One month later, Mr. Salzano quit his employment at Lace.

Mr. Salzano, however, lacks standing to bring this action in this Court and the Court lacks subject matter jurisdiction because Mr. Salzano is party to several valid and enforceable arbitration agreements with LEI in the form of Non-Exclusive Leases of Dee Jay Equipment & Entertainment Facilities (each an "Arbitration Agreement," and collectively "Arbitration

---

[1]   The Complaint is attached to the Declaration of Howard Davis as <u>Exhibit 1</u>.
[2]   LEI operates only the West Nyack location of Lace Gentlemen's Club – the only club at which Mr. Salzano performed. Lace Entertainment, Inc. does not own or operate any other Lace Gentlemen's Club locations or any locations of "The Go-Go Rama," "Diamond Club," or "Stiletto," as alleged in the Complaint at Paragraph 16. Declaration of Lace manager, Ellen Ettz ("Ettz Decl.") ¶ 3.

1

Agreements").³ In the Arbitration Agreements, Mr. Salzano clearly waived his right to bring any claims in court arising out of his performance of DJ services at, or separation from, Lace. The Arbitration Agreements, instead, obligate him to assert claims, such as the ones at issue here, in arbitration. The merits of Mr. Salzano's claims aside, because the causes of action he asserts are all subject to valid and binding arbitration agreements, as discussed herein, his Complaint should be dismissed, in its entirety, and arbitration compelled under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and under §§ 2, 3 and 4 of the FAA. If, however, the Court disagrees that Mr. Salzano's case should be dismissed at this juncture, then pursuant to the FAA § 3, his action must be stayed, in its entirety, pending the outcome of compulsory arbitration.

## FACTS

### I. Background

Lace leased its "Dee Jay" equipment and entertainment facilities to Mr. Salzano to perform his disc jockey business on premises at Lace beginning in 2006. Ettz Decl. ¶ 4. At that time Mr. Salzano executed a Non-Exclusive Lease of Dee Jay Equipment & Entertainment Facilities, attached to the Ettz Decl. as Exhibit B. Ettz Decl. ¶ 4. After numerous incidents involving poor performance, erratic behavior and substance abuse, Mr. Salzano's lease agreement with Lace was terminated. Ettz Decl. ¶ 4. Mr. Salzano did not perform at Lace at all in the years 2007 through 2009. Ettz Decl. ¶ 4. In or around December 2009 Mr. Salzano contacted Lace and requested "another chance" to once again perform as a disc jockey at Lace. Ettz Decl. ¶ 5. As an accommodation to Mr. Salzano, and under belief and hope that he had resolved his issues, in 2010 Lace agreed to allow Mr. Salzano to return

---

³   A copy of the Arbitration Agreements are annexed to the accompanying Ettz Decl. collectively as Exhibit A.

to perform. Mr. Salzano once again voluntarily entered into an Arbitration Agreement. The Arbitration Agreement was renewed in 2011 and 2012.[4] Ettz Decl. ¶ 5.

## II. Mr. Salzano Performed at Lace How and When He Chose

As a Disc Jockey performing on premises at Lace, Mr. Salzano played music, introduced entertainers, operated lighting and smoke machines, and generally coordinated stage performances. Ettz Decl. ¶ 6.

Mr. Salzano performed approximately one and one-half times per week, (some weeks he would perform once a week and other weeks he would perform twice a week) during the time that he performed at Lace. Ettz Decl. ¶ 7. During the time that he was a lessee, Mr. Salzano also performed at Lace how he saw fit without any influence or control by management at the Club. Moreover, Mr. Salzano was free to perform at competitors of Lace. Ettz Decl. ¶ 7.

Mr. Salzano was well compensated as a disc jockey at Lace. Ettz Decl. ¶ 8. Mr. Salzano would earn, on average between $150 to $300 per night for approximately eight hours. Ettz Decl. ¶ 8. During the time that Mr. Salzano performed at Lace as a lessee, he was able to decide when he would perform without discussion or involvement from management. Ettz Decl. ¶ 8.

## III. Mr. Salzano Agrees to Arbitrate Any Claims Arising Out of His Lease and Performance at Lace

On January 2, 2010, January 4, 2011, and January 3, 2012, as consideration for LEI's agreement to lease its equipment and facilities to Mr. Salzano, Mr. Salzano agreed to arbitrate any claims he might have arising out of his relationship with Lace. *See* Ettz Decl. ¶ 9, Arbitration Agreements, attached to the Ettz Decl. as Exhibit A, Paragraph 6(C). The

---

[4] In May 2012 the Disc Jockey role at Lace was substantively changed and Disc Jockeys were hired as employees. Ettz Decl. ¶ 5, n.2.

3

Arbitration Agreements provide that:

> **ALL DISPUTES ARISING FROM THIS LEASE SHALL BE EXCLUSIVELY DECIDED BY BINDING ARBITRATION IN ACCORDANCE WITH THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION AND AS MAY BE MODIFIED BY ANY BY ANY STATE ARBITRATION ACT.  ALL FEES SHALL BE PAID BY NON-PREVAILING PARTY.**

*See* Ettz Decl., Exhibit A, ¶ 6(C) (emphasis in original).[5]

### IV.  Mr. Salzano Claims Disability and Stops Performing at Lace

In late August 2012 Mr. Salzano requested that Lace void his pay checks issued as a result of his employment with Lace so that he could collect disability, despite his acknowledgment that he was capable of working. Ettz Decl. ¶ 10.  Lace refused this request. Ettz Decl. ¶ 10.  In early October 2012 Mr. Salzano stated that he was no longer going to perform at Lace because he was going to have surgery and was entering rehabilitation to address his substance abuse. Ettz Decl. ¶ 11.  Mr. Salzano was told that when he returned from surgery and rehabilitation he could continue to perform at Lace. Ettz Decl. ¶ 11.  Mr. Salzano never returned to perform at Lace. Ettz Decl. ¶ 11.

### STANDARD OF REVIEW

The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91, (2000) (internal citations omitted); *see also In re Am. Express Merchants' Litig.*, 634 F.3d 187, 191 (2d Cir. 2011) (abrogated on other grounds).  "Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *LaVoice v. UBS Fin. Servs., Inc.*, 11 CV. 2308 (BSJ) (JLC), 2012 WL 124590, at *2 (S.D.N.Y. Jan. 13, 2012) (*quoting*

---

[5]  The Arbitration Agreements also contain a class and collective action waiver at paragraph 6(E).

*Nunez v. Citibank, N.A.*, 08 CV. 5398 (BSJ), 2009 WL 256107, at *2 (S.D.N.Y. Feb. 3, 2009) (internal citations omitted).  However, where all of the claims asserted are subject to arbitration, the Court should dismiss rather than stay the case.  *See*, *e.g.*, *Reynolds v. de Silva*, 09 CIV. 9218 (CM), 2010 WL 743510, at *8 (S.D.N.Y. Feb. 24, 2010) (noting that "[a]ll courts of which we are aware have followed the rule that, [w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings" (internal citations omitted)).

## ARGUMENT

Mr. Salzano's Complaint should be dismissed with prejudice and Mr. Salzano compelled to arbitrate his claims pursuant to the Arbitration Agreements.  In the alternative, if the Court disagrees that Mr. Salzano's Complaint should be dismissed at this stage, Mr. Salzano should be compelled to arbitrate his claims, as he is legally bound to do, and this action stayed pending the outcome of such arbitration.

### I. The Complaint Should Be Dismissed Pursuant to FRCP §§ 12(b)(1), 12(b)(6) and §§ 2, 3, and 4 of the FAA and Arbitration Compelled Because All Causes of Action Are Subject to Compulsory Arbitration

The claims set forth in the Complaint rely solely on alleged violations of the FLSA and the NYLL, both of which Mr. Salzano agreed to arbitrate pursuant to the Arbitration Agreements.  Accordingly, this Court lacks subject matter jurisdiction over all of Mr. Salzano's claims and Mr. Salzano lacks standing to bring these claims in court.  Therefore, the Complaint must be dismissed with prejudice, in its entirety, and arbitration compelled pursuant to FRCP §§ 12(b)(1) and 12(b)(6) and §§ 2, 3 and 4 of the FAA.

Courts must look at three factors to determine if a plaintiff is bound by a mandatory arbitration agreement when asserting claims founded on statutory rights.  These are: (1)

whether the parties agreed to arbitrate; (2) the scope of that agreement and (3), in the case of federal statutory claims, if Congress clearly intended to preclude arbitration of the claims asserted. *See*, *e.g.*, *Mitsubishi Motors Corp.v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985); *Oldroyd v. Elmira Sav. Bank. FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998); *LaVoice*, 2012 WL 124590.   In this action, as discussed below, Mr. Salzano's claims satisfy all three prongs of the test and are, therefore, subject to compulsory arbitration.

### A. The Federal Arbitration Act

The Federal Arbitration Act provides that pre-dispute arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The "overarching policy of the FAA … is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1742 (2011) ("The principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms.").  The Supreme Court recently reaffirmed that the FAA "requires courts to enforce agreements to arbitrate according to their terms … unless the FAA's mandate has been 'overridden by a contrary Congressional command.'" *CompuCredit v. Greenwood*, 132 S. Ct. 665, 669 (2012).

In a case such as this one, where, as discussed herein, a valid arbitration agreement governs, the FAA requires the district court to compel arbitration.  Pursuant to the FAA:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . [u]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4

Courts in this Circuit repeatedly uphold arbitration agreements entered into between employees and their employers. *See*, *e.g.*, *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, at *296 – 299 (2d Cir. 2013); *see also Isaacs v. OCE Bus. Servs., Inc.*, 13 CIV. 0548 JGK, 2013 WL 4744807, at *4 (S.D.N.Y. Sept. 4, 2013). The FAA governs arbitration agreements in the employment context. *See Nunez*, 2009 WL 256107, at *3-4; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). Moreover, under the FAA, there is a strong presumption that an agreement to arbitrate is valid. *See*, *e.g.*, *Nunez*, 2009 WL 256107, at *3-4; *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 29-30 (2d Cir. 2001). Courts broadly construe arbitration agreements and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Thus, where there is an agreement to arbitrate, arbitration must be compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993).

While Section 3 of the FAA instructs district courts to enter a "stay of proceedings" in cases where the asserted claims are "referable to arbitration" (9 U.S.C. § 3), "[a]ll courts of which [the Southern District is] aware have followed the rule that, '[w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings.'" *Reynolds*, 2010 WL 743510, at *8-9 (*citing Spencer-Franklin v. Citigroup/Citibank N.A.*, 06 CIV. 3475 (GBD)(GWG), 2007 WL 521295, at *4, 11 (S.D.N.Y. Feb. 21, 2007) *report and recommendation adopted*, 06 CIV. 3475 (GBD), 2007 WL 1052451 (S.D.N.Y. Apr. 5, 2007) (internal citations omitted); *see also Johnson v.*

7

*Tishman Speyer Properties, L.P.*, 09 CIV. 1959 (WHP), 2009 WL 3364038, at *4 (S.D.N.Y. Oct. 16, 2009) ("[C]ourts have the discretion to dismiss--rather than stay--an action when all of the issues in it must be arbitrated."); *Drakeford v. Washington Mut.*, 07 CIV. 03489 (GBD), 2008 WL 2755838, at *4 (S.D.N.Y. July 11, 2008) ("Since this Court finds that all of plaintiff's claims against [defendant] are subject to arbitration, all claims against [defendant] are dismissed."). Accordingly, since here all of Mr. Salzano's claims are subject to arbitration pursuant to the Arbitration Agreement, because they "aris[e] from the lease," the Complaint should be dismissed rather than stayed and arbitration should be compelled.

### B. There Is No Question that the Parties Agreed to Arbitrate

There is no question that Mr. Salzano agreed to arbitrate the very claims he brings in his Complaint. Indeed, both he and Lace signed the Arbitration Agreements containing the capitalized and bolded paragraph titled "**ARBITRATION**." *See* Arbitration Agreements, attached to the Ettz Decl. as Exhibit A. The Arbitration Agreements are clear that, "all disputes arising from th[e] lease shall be exclusively decided by binding arbitration…." *See id.* Under New York law, this formed a valid and binding arbitration agreement. *See*, *e.g.*, *Rompalli v. Portnova*, 09 CIV. 3083 RMB/FM, 2010 WL 2034396 (S.D.N.Y. May 5, 2010) *report and recommendation adopted,* 09 CIV. 3083 RMB/FM, 2010 WL 2034362 (S.D.N.Y. May 21, 2010) (holding there was no claim for fraudulent inducement when the arbitration agreement in the employment context was clear); *Ciago v. Ameriquest Mortgage Co.*, 295 F. Supp. 2d 324, 328-29 (S.D.N.Y. 2003) (same); *Matter of Ball (SFX Broad. Inc.)*, 236 A.D.2d 158, 665 N.Y.S.2d 444, 446 (3d Dep't 1997) (arbitration agreement signed in consideration of continued employment is valid).

### C. All of Mr. Salzano's Claims Fall Expressly within the Scope of the Agreements

The Arbitration Agreement signed by both Mr. Salzano and Lace expressly provides that claims "arising from the lease" be determined solely by binding arbitration. Mr. Salzano's claims all relate to his performance of disc jockey services at Lace pursuant to the lease Arbitration Agreements. Accordingly, all of the claims in this action expressly fall within the scope of the Arbitration Agreement.

### D. Claims Brought Pursuant to the FLSA and NYLL are Arbitrable

It is "well settled" that a statutory claim is not exempt from arbitration "absent a contrary Congressional intent." *Oldroyd*, 134 F.3d at 77-78; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) (federal policy in favor of arbitration extends to claims under federal statutes). Nothing in the FLSA indicates a Congressional intent precluding arbitration of FLSA claims. As the Southern District explained in *Dixon v. NBC Universal Media, LLC*, No. 12 Civ. 7646 (PAE), 2013 WL 2355521, at *10-11 (S.D.N.Y. May 28, 2013), while the "statute's text is plain" that the FLSA allows arbitration of FLSA claims, the statutory history also "does not demonstrate Congressional intent to preclude waiver of FLSA collective action claims." Indeed, the Circuit courts that have addressed the issue of whether employees can waive their rights to bring FLSA claims in court and instead proceed in arbitration, have all agreed that nothing in the FLSA precludes such a waiver. *See id.* at *9. Likewise, courts in this Circuit have repeatedly held that FLSA claims are arbitrable. *See*, *e.g.*, *Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299, 304 (S.D.N.Y. 2010) *aff'd*, 408 F. App'x 480 (2d Cir. 2011) (dismissing complaint and compelling arbitration because "Congress did not intend FLSA claims to be non-arbitrable"); *Rompalli*, 2010 WL 2034396, at *6 (FLSA claims are arbitrable); *Reynolds*, 2010 WL 743510,

9

at *5 (dismissing action, compelling arbitration and noting that plaintiff failed to "point to anything in the text of the FLSA that suggests Congress intended to preclude arbitration of FLSA claims.").

As with FLSA claims, "[c]ourts in this District have also consistently found claims asserted under the NYLL to be arbitrable." *Reynolds*, 2010 WL 743510, at *4-5; *see also Metzler v. Harris Corp.*, 00 CIV 5847 HB, 2001 WL 194911, at *3-5 (S.D.N.Y. Feb. 26, 2001) (holding that NYLL claims for alleged unpaid commissions were subject to the arbitration clause in the commission agreement); *Ciago*, 295 F. Supp. 2d at 334 (compelling arbitration of NYLL wage claims and holding that there is no indication "that the state legislature intended to preclude compulsory arbitration of [such] claims"); *Steele v. L.F. Rothschild & Co., Inc.*, 701 F. Supp. 407, 408 (S.D.N.Y. 1988) (compelling arbitration of unequal pay claims brought under the FLSA and NYLL); *Mikes v. Strauss*, 889 F. Supp. 746, 756-57 (S.D.N.Y. 1995) (holding that plaintiff's NYLL severance benefits claim was subject to compulsory arbitration pursuant to an arbitration clause in plaintiff's employment agreement).

## II. Should the Court Decline to Dismiss the Complaint, a Stay Should Be Granted Pending the Outcome of Arbitration

While Defendants contend that the action should be dismissed since all of Mr. Salzano's claims are subject to compulsory arbitration, if the Court disagrees with dismissal at this juncture, then arbitration must be compelled and the action stayed pending the outcome of such arbitration. The FAA expressly mandates:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of

10

one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement….

9 U.S.C. § 3.

Thus, because Mr. Salzano's claims are all referable to arbitration under the Arbitration Agreements, staying of the action pending the outcome of arbitration is the only other alternative should the Complaint not be dismissed in its entirety.

## CONCLUSION

As outlined above and in the accompanying Declaration of Howard Davis and the Declaration of Ellen Ettz, and attached exhibits, the Complaint should be dismissed in its entirety and with prejudice, pursuant to FRCP 12(b)(1) and 12(b)(6) and arbitration should compelled. In the alternative, should the Court decline dismissal at this juncture, pursuant to the FAA, arbitration should be compelled and the case stayed, in its entirety, pending the outcome of such arbitration.

Dated:  New York, New York
       November 11, 2013

                         MEISTER SEELIG & FEIN LLP

                         /s/ Jeffrey A. Kimmel
                         By: Jeffrey A. Kimmel
                             Howard Davis
                         Two Grand Central Tower
                         140 East 45th Street, 19th Floor
                         New York, New York 10017
                         Phone: 212-655-3500
                         Facsimile: 212-655-3535

                         *Attorneys for Defendants*